IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MICHAEL T. SABOURIN,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br>UNIVERSITY OF UTAH, JOHN DOES I-X,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 2:06-CV-1017 TS |

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons discussed below, the Court will grant the Motion.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."[1]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a

---

[1]Fed.R.Civ.P. 56(c).

verdict for the nonmoving party in the face of all the evidence presented.[2]  The Court is required

to construe all facts and reasonable inferences in the light most favorable to the nonmoving

party.[3]

## II.  STATEMENT OF FACTS

In August 2003, Michael Sabourin ("Plaintiff") began working at the University of Utah

("University" or "Defendant") as a contract employee.  In October 2004, Plaintiff became a full-

time benefitted employee of the University and at all times worked in the University's

Department of Environmental Health and Safety ("EHS").  At all times during the tenure of

Plaintiff's employment, his salary and benefits were funded exclusively from grant proceeds

obtained by the University.

Defendant claims that by the summer of 2006, the grants previously used to fund

Plaintiff's employment were depleted.  Plaintiff disputes this claim, asserting that there were

grant monies available to fund his position.

Plaintiff's supervisor, Marty Shaub, submitted an Intent to Impose a Reduction in Force

("RIF") in relation to the position held by Plaintiff on May 31, 2006.[4]  That request states that

"[t]he decision to impose this reduction in force is based on a grant which runs out of funds June

---

[2]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[4]Docket No. 48, Ex. 5.

30, 2006."[5]  In her Affidavit, Ms. Shaub states that she submitted the request due to a lack of funding for Plaintiff's position.[6]  Ms. Shaub's plan was to eliminate the position held by Plaintiff on June 30, 2006.[7]  Plaintiff does not dispute the Ms. Shaub submitted a written request to eliminate his position, but does dispute the reason for doing so was due to a lack of funding.  As set forth above, it is Plaintiff's contention that sufficient funding existed to continue his position.

Plaintiff first mentioned the possibility of taking leave under the Family and Medical Leave Act ("FMLA") on June 5, 2006, due to child care needs.[8]  Plaintiff formally requested FMLA leave on June 6, 2006.[9]  Plaintiff's FMLA leave was approved on June 8, 2006, with the first day of FMLA leave to begin on June 9, 2006.[10]

Prior to the initiation of the RIF and Plaintiff's FMLA leave, in April 2006, Ms. Shaub requested an audit by the University's internal audit department to help EHS improve its grant administrative practices.  A draft report, of which Plaintiff disputes many of the findings and conclusions, indicated that there were potentially systemic problems resulting in mistakes on individual grants.  Ms. Shaub asked Plaintiff to prepare a response to the draft audit report.

---

[5]*Id*.

[6]Docket No. 48, Ex. 2 at ¶ 27.

[7]Docket No. 48, Ex. 5.

[8]Docket No. 48, Ex. 1 at 73.

[9]Docket No. 48, Ex. 6.

[10]Docket No. 48, Ex. 8.

Plaintiff began compiling a response on a spreadsheet (the "spreadsheet"). Prior to completing the response to the audit report, Plaintiff requested and was granted FMLA leave.

When Plaintiff took his FMLA leave, he removed a number of files from his office and erased electronic files from the University's server. Upon discovering this, Ms. Shaub requested the return of these files and Plaintiff's email access and cell phone were disconnected. Plaintiff admits that he did take home certain files, but that he did so regularly and did so only so he could work from home while on FMLA leave. Plaintiff further admits that he deleted files from the server but states that the files he deleted from the University server were personal in nature and that he did not erase them maliciously.

Defendant further alleges that Plaintiff "scrubbed" all files from a laptop computer that he eventually returned to the University. Plaintiff disputes that he "scrubbed" the laptop. Rather, he suggests that he cleared the laptop of software programs he had purchased, as he had purchased more updated software than the University had provided him. As discussed below, Plaintiff later returned the laptop to the University with only the operating system and the spreadsheet on the computer, but no program to open the spreadsheet. Plaintiff has offered no explanation as to what happened to the original programs that were on the laptop when it was provided to him by the University.

The University's human resources department scheduled a meeting with Plaintiff for June 13, 2006. Defendant asserts that the purpose of this meeting was to retrieve files relating to Plaintiff's work, listen to Plaintiff's concerns, and provide Plaintiff the notice of the reduction in force. Plaintiff states that he believed the meeting was to discuss concerns that had arisen

between himself and Ms. Shaub.  At the June 13, 2006 meeting, Plaintiff returned certain files. Plaintiff did not, however, return two documents: the spreadsheet Plaintiff had been compiling in response to the audit and an After Action Report from a University exercise. Nor did he return the University laptop.  Plaintiff alleges that, up to this point, these documents had not been requested.

At the June 13 meeting, Plaintiff was provided notice of the reduction in force.[11]  Plaintiff grieved the RIF on June 19, 2006.[12]

Despite repeated requests from his supervisor to provide the spreadsheet and After Action Report,[13] Plaintiff did not provide the spreadsheet until June 22, 2006, when he returned the laptop to Defendant.  As previously noted, when Plaintiff returned the laptop it contained only the operating system and the spreadsheet, with no program to access it and, thus, it could not be opened until Defendant installed updated software on the laptop.  As stated above, Plaintiff asserts that he removed his own software programs from the laptop.  Plaintiff never provided a hard copy of the After Action Report as requested.  Plaintiff asserts that Ms. Shaub had access to that document through her email account.  Plaintiff's deposition testimony, however, reveals that the After Action Report was accessible through Plaintiff's email account, not Ms. Shaub's.[14]

---

[11]Docket No. 48, Ex. 10.

[12]Docket No. 48, Ex. 17.

[13]The audio recordings of messages left by Plaintiff's supervisor and a human resources representative can be found at Docket No. 53, Ex. 2.

[14]Docket No. 48, Ex. 1 at 128, 169.

Due to Plaintiff's actions, Plaintiff's supervisor determined, in conjunction with input from Defendant's human resources department, that a pre-disciplinary conference would be warranted. On June 17, 2006, Plaintiff received a Notification of Pre-Disciplinary Conference from his supervisor, dated June 15, 2006, notifying him of the pre-disciplinary conference, the charges against him, and his opportunity to respond to those charges.[15]

The Notification of Pre-Disciplinary Conference stated:

Pursuant to University Policy and Procedure 2-9, Disciplinary Action and Dismissal of Staff Employees, the purpose of this memorandum is to inform you of my intent to terminate your employment for failing to return University files you removed from your office in Environmental Health and Safety as requested by myself and Diane Nelson from Human Resources and for deleting your electronic files.

On or about June 8, you removed every file in your office without prior discussion with me. You left no back up copies, nor an inventory of what was removed as a means of ensuring all documents would be returned. I left a message requesting their immediate return on your home answering machine [on] June 9, which was not returned by you. You did[,] however, admit to Diane Nelson that you have the files and were planning to work from home. Diane Nelson talked with you [on] June 12, and she instructed you to return all the files.

On June 13, 2006, you met with me, Diane Nelson and Randy Vandyke and returned two boxes of files. During that meeting you were instructed to return the After Action and spreadsheet in their current state of completion. On June 14, I was informed that you obtained the After Action report from Les Chatelain that morning. I left a message for you that afternoon and instructed you to return the files immediately.

On June 15, you came into the office and did not provide the files. When Mary Sorensen requested the files from you, you stated that you had given everything to me at the meeting. She asked again for the specific files and you stated that you had not returned those files because they "weren't finished yet" despite the fact you had been instructed to return them in their current state.

---

[15]Docket No. 48, Ex. 9.

> In addition, it appears as though all of your electronic records are missing and have been deleted from the server.
>
> The University's ability to address questions raised by Internal Audit regarding spending with these grants is contained in these files. The potential impact of the University not having these files is serious and can be well over $350,000. As you did not ensure backups were made or communicated to me, the University would be unable to demonstrate appropriate oversight occurred during the performance period should anything happen to this detail while solely in your custody. That is unacceptable.[16]

The Notification of Pre-Disciplinary Conference goes on to state the date, time and location of the pre-disciplinary conference and explains that "the purpose of the Pre-Disciplinary Conference is to provide you a 'right-of-response.' It is your opportunity to address the allegations."[17]

During a June 19, 2006 conference call, Plaintiff agreed to hand in his phone, laptop computer, and the spreadsheet he had been working on.

On June 22, 2006, Plaintiff attended the pre-disciplinary conference with his supervisor, Ms. Shaub, and an employee relations specialist with the University's human resources department. Plaintiff expected that this meeting would be his opportunity to address the allegations against him and to exercise a right of response.[18] On that date, Plaintiff returned the laptop, which contained an electronic version of the spreadsheet and, as already stated, no program to open it. A hard copy of the spreadsheet and the After Action Report were not provided.

_____

[16]*Id.*

[17]*Id.*

[18]Docket No. 4 at ¶ 62.

On June 30, 2006, Defendant provided a Notification of Decision to Terminate

Employment.[19]  The Notification reiterated many of the statements contained in the Notification

of Pre-Disciplinary Conference and went on to state:

> [P]rior to June 9, all of your electronic records were deleted from the server. There was no business reason for this—if you had a legitimate reason to work on the files from home, you could have copied those files.  The only conclusion that can be drawn is that you deleted the files from the server to interfere with Environmental Health & Safety's ability to respond to an internal audit and to otherwise be able to function in an orderly fashion.
>
> In a conference call on Monday, June 19, 2006, you stated that the After Action Report was given to you by an outside contractor.  You obtained permission to transfer the report into a Homeland Security template.  You stated that I could obtain her report from your email but that you would not provide the report in its revised state.  Also during the call, you said that you would return the spreadsheet with the work you had completed.  You were to return all University files and property.  You agreed to put all work-related files on your laptop and return the laptop.
>
> In the pre-disciplinary conference held, you returned your laptop.  You stated it was "clean" except for the spreadsheet.  When Melissa asked you for the other files, you stated that you did not need to return them and that "everything was in your email."  In reviewing the laptop, you deleted all the supporting software.
>
> The University's ability to address questions raised by Internal Audit regarding spending with these grants is contained in these files.  The potential impact of the University not having these files is serious and can be well over $350,000.  As you did not ensure backups were made or communicated to me, the University would be unable to demonstrate appropriate oversight occurred during the performance period should anything happen to this detail while solely in your custody.  That is unacceptable.  In addition, because of your lack of full cooperation, it still remains unclear whether you have returned all the necessary files to the University.  Thus, because of your conduct, the University remains in a position where it may be difficult to appropriately respond to an audit.  This, too, is unacceptable.

---

[19]Docket No. 48, Ex. 15.

> I have reviewed the information and decided to terminate your employment. The effective date of your termination is June 30, 2006.[20]

The Notification of Decision to Terminate Employment went on to inform Plaintiff of his appeal rights.[21]  Plaintiff grieved his termination on July 8, 2006.[22]

Also on June 30, 2006, and subsequent dates thereafter, Defendant, through its general counsel, sent letters to Plaintiff requesting the return of certain property.[23]  The parties dispute Plaintiff's compliance with those requests and whether Plaintiff is currently in possession of University property.[24]

Plaintiff admits that he was afforded two total pre-termination hearings, one prior to his RIF and one prior to his termination; he was also provided a post-termination evidentiary hearing on September 12, 2006.[25]  Plaintiff admits that he was advised of and attended the pre-disciplinary conference on June 22, 2006.[26]  Plaintiff further admits that he was advised of and attended a hearing before Defendant's Staff Employment Grievance Committee in September 2006, which addressed matters related to the decision to terminate his employment and with the

---

[20]Docket No. 48, Ex. 15.

[21]*Id.*

[22]Docket No. 48, Ex. 17.

[23]Docket No. 48, Ex. 11.

[24]*Compare* Docket No. 48, Ex. 13 *with* Docket No. 52, Ex. 17.

[25]*Compare* Docket No. 48, at xviii *with* Docket No. 50, at xxxiii.

[26]*Compare* Docket No. 48, at xviii *with* Docket No. 50, at xxxiii.

reduction in force.[27] Plaintiff was represented by counsel at that hearing, provided

documentation in support of his position and participated in questioning of University

personnel.[28] Plaintiff admits that he was permitted to testify on his behalf at the September 2006

hearing and the pre-disciplinary conference held on June 22, 2006.[29] Plaintiff also admits that he

submitted documentation on his behalf at the September 2006 hearing.[30]

The termination decision was upheld by the grievance committee and ratified by the

University Vice President on September 15, 2006, and September 19, 2006, respectively.[31]

## III.  DISCUSSION

A.     FMLA CLAIMS

Plaintiff's First and Second Causes of Action allege violation of the Family and Medical

Leave Act.  Plaintiff alleges that Defendant violated the FMLA when it eliminated his position

via a reduction in force and when it later terminated his employment.  Plaintiff alleges claims of

both interference and retaliation in relation to the RIF and termination.  Each claim will be

discussed below.

---

[27]*Compare* Docket No. 48, at xviii *with* Docket No. 50, at xxxiii.

[28]*Compare* Docket No. 48, at xviii *with* Docket No. 50, at xxxiii.

[29]*Compare* Docket No. 48, at xviii *with* Docket No. 50, at xxxiii.

[30]*Compare* Docket No. 48, at xviii *with* Docket No. 50, at xxxiii.

[31]Docket No. 48, Ex. 16.

1.      *Interference Claim Based on RIF*

"To make out a prima facie claim for FMLA interference, a plaintiff must establish (1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights."[32]

Defendant assumes for the sake of argument that the first two elements can be met. The Court will do the same. Defendant argues that Plaintiff cannot show that its action was related to the exercise or attempted exercise of Plaintiff's FMLA rights. Specifically, Defendant argues it had begun the process of the RIF before Plaintiff invoked FMLA.

The Tenth Circuit has stated that "an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request."[33] Thus, if an employee's termination would have occurred regardless of the request for FMLA leave, the employee may be terminated even if such termination prevents the employee from exercising his right to leave under FMLA.[34]

Here, the undisputed evidence shows that Defendant began the RIF process several days before Plaintiff ever mentioned taking FMLA leave. On May 31, 2006, Plaintiff's supervisor

---

[32] *Jones v. Denver Public Schools*, 427 F.3d 1315, 1319 (10th Cir. 2005).

[33] *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir. 1998).

[34] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004); *see also* 29 C.F.R. § 825.216(a) (noting that employee may be laid off or refused return to shift that has been eliminated, as long as the action would have been taken in the absence of FMLA leave).

submitted, in writing, her intention to impose a RIF regarding Plaintiff's position to the human resources department at the University.[35] Plaintiff, at the earliest, mentioned FMLA on June 5, 2006, requested FMLA leave on June 6, 2006, was granted FMLA leave on June 8, 2006, and began his leave on June 9, 2006. The reason to impose the RIF, according to Defendant, was that the grant money which funded Plaintiff's position had run out. As set forth above, Plaintiff disputes Defendant's contention that there were insufficient funds to fund his position. However, this dispute is immaterial to Plaintiff's interference claim based on the RIF because Plaintiff has produced no evidence that the RIF, a decision that was made on May 31, 2006, was related to the exercise or attempted exercise of his FMLA rights, which occurred some days later. Therefore, Plaintiff cannot show that the RIF decision was related to his FMLA leave request and this claim must be dismissed.

2.    *Retaliation Claim Based on RIF*

Retaliation claims are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*.[36] "Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. If the plaintiff does so, then the defendant must offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual."[37]

---

[35]Docket No. 48, Ex. 2 at ¶ 27; Docket No. 48, Ex. 5.

[36]*Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)).

[37]*Id*. (internal citations omitted).

"To state a prima facie case of retaliation, [Plaintiff] must show that: (1) [he] engaged in protected activity; (2) [Defendant] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action."[38]  The Tenth Circuit has "characterized the showing required to satisfy the third prong under a retaliation theory to be a showing of bad intent or 'retaliatory motive' on the party of the employer."[39]

For substantially the same reasons that Plaintiff's interference claim based on the RIF must be dismissed, this claim must be dismissed as well.  The undisputed evidence shows that the RIF decision came several days before Plaintiff even mentioned the FMLA.  Therefore, Plaintiff cannot show a causal connection between the protected activity and the adverse action and, thus, cannot make out a prima facie case for FMLA retaliation with regard to the RIF.

   3.   *Interference Claim Based on Termination*

As previously noted, "[t]o make out a prima facie claim for FMLA interference, a plaintiff must establish (1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights."[40]

Plaintiff claims that Defendant interfered with his FMLA rights when it terminated him. Defendant, on the other hand, argues that it terminated Plaintiff because he had failed to return

---

[38]*Id*. at 1171.

[39]*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (quoting *Metzler*, 464 F.3d at 1171).

[40]*Jones*, 427 F.3d at 1319.

13

paper files belonging to Defendant, had deleted all electronic files from his University computer, and failed to return additional University property in his possession. Plaintiff disputes these claims and argues that he complied with Defendant's request to return property.

The undisputed evidence shows that Plaintiff did not comply with Defendant's requests to return documents, both paper and electronic, and other University property. Specifically, Plaintiff failed to timely comply with Defendant's requests to return the spreadsheet and the After Action Report. Plaintiff ultimately did provide an electronic copy of the spreadsheet. However, he did so only after several requests and in a manner that made it inaccessible to Defendant unless software was replaced and updated. Further, it is undisputed that Plaintiff never provided a hard copy of the After Action Report. Plaintiff has provided nothing to show that Defendant's decision to terminate was related to the exercise of his FMLA rights. Rather, the evidence shows that the decision to terminate was based on Plaintiff's own misconduct, as set forth above. Therefore, he has failed to make out a claim for interference based on his termination.

### 4. *Retaliation Claim Based on Termination*

As set forth above, retaliation claims are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*.[41] "Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. If the plaintiff does so, then the defendant must

---

[41]*Metzler*, 464 F.3d at 1170 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802–04).

offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual."[42]

Defendant concedes that Plaintiff can make out a prima facie case of retaliation. Additionally, the Court finds that Defendant has offered legitimate, non-retaliatory reasons for the termination of Plaintiff. "The burden thus shifts to [Plaintiff] to 'show that there is a genuine dispute of material fact as to whether [Defendant's] reasons for terminating [him] are pretextual.'"[43] Plaintiff may meet this burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[44]

Plaintiff points primarily to the close proximity between his taking FMLA leave and his termination. However, the Tenth Circuit has "never allowed 'even very close temporal proximity [taken alone] to operate as a proxy for the evidentiary requirement that the plaintiff demonstrate pretext.'"[45] Rather, to show pretext Plaintiff "must . . . present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive."[46] Plaintiff has failed to do so here.

---

[42]*Id*. (internal citations omitted).

[43]*Campbell*, 478 F.3d at 1290 (quoting *Metzler*, 464 F.3d at 1172).

[44]*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotation omitted).

[45]*Campbell*, 478 F.3d at 1290 (quoting *Metzler*, 464 F.3d at 1172).

[46]*Metzler*, 464 F.3d at 1172.

Plaintiff argues that the fact that he kept working despite taking FMLA leave shows a weakness in Defendant's stated reasons. Plaintiff further argues that the fact that Defendant did not provide any progressive discipline shows an irregularity. The Court disagrees with the assessment of these facts. As to the first argument, the Court is unclear as to how Plaintiff's own actions of continuing to work reflect a weakness in Defendant's reasons for termination. As to the second argument, Plaintiff was already being let go based on the RIF. Thus, there was no possibility of progressive discipline and termination was the only option based on Plaintiff's misconduct. Based on the above, the Court finds that Plaintiff has failed to show that Defendant's stated justifications for his termination "are so weak, implausible, inconsistent, or contradictory as to support a reasonable inference that [Defendant] did not act for those reasons."[47] Therefore, Plaintiff has failed to meet his burden to demonstrate pretext and summary judgment is warranted.

B.      BREACH OF CONTRACT

Plaintiff alleges that he had a contract with Defendant in which it was agreed that he would not be subject to retaliation for initiating the grievance process. Plaintiff argues that Defendant breached that contract by terminating him after he had initiated the grieving process in relation to the RIF.

Defendant argues that there is no evidence that it retaliated against Plaintiff for initiating the grievance process because he did not engage in that process until after he had been terminated. This argument conflates separate events. As set forth above, Plaintiff was given

---

[47]*Id*. at 1179.

notice of the RIF on June 13, 2006. Plaintiff grieved the RIF on June 19, 2006. The parties proceeded to a pre-disciplinary conference on June 22, 2006. Plaintiff was then terminated on June 30, 2006, which he grieved on July 8, 2006.

Plaintiff's argument is that Defendant terminated his employment on June 30, 2006, based on his grieving of the RIF, which resulted in a breach of contract. Thus, Defendant's argument, that Plaintiff did not engage in the grievance process before the adverse action, is not well taken. However, as with Plaintiff's FMLA claims, there is a complete lack of evidence that Plaintiff was terminated due to his grieving the RIF. Without any such evidence, Plaintiff's breach of contract claim must fail. Additionally, there is a serious question as to whether any contract exists between the parties.

C.      WRONGFUL TERMINATION

Plaintiff's Fourth Cause of Action alleges a claim for wrongful termination. Defendant argues that summary judgment should be entered on this claim based on Plaintiff's failure to comply with the notice requirements of the Utah Governmental Immunity Act. Plaintiff concedes that summary judgment is appropriate on his claim for wrongful termination. Therefore, summary judgment will be entered in favor of Defendant and against Plaintiff on this claim.

D.      DUE PROCESS

The Due Process Clause of the Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property without due process of law."[48] "To assess

_____

[48]U.S. Const. amend XIV, § 1.

whether an individual was denied procedural due process, district courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."[49]  Defendant assumes that Plaintiff has a protected interest.  Thus, the issue becomes whether he was afforded an appropriate level of process.

In *Cleveland Board of Education v. Loudermill*,[50] the Supreme Court held that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"[51]  A full evidentiary hearing is not required.[52]  But an individual "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."[53]

Here, Plaintiff complains that he was not afforded pre-deprivation procedural due process as to the reduction in force and that the post-deprivation procedural due process as to the reduction in force was inadequate.[54]

---

[49]*Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996) (citations and internal quotation marks omitted).

[50]470 U.S. 532 (1985).

[51]*Id*. at 542 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

[52]*Id*. at 545.

[53]*Id*. at 546.

[54]Plaintiff appears to concede any due process claim related to his termination, his liberty interest in his good name and reputation, and substantive due process.  Therefore, summary

The sequence of events is as follows: Plaintiff was provided notice of the reduction in force at the June 13, 2006 meeting. Plaintiff grieved the RIF on June 19, 2006. The parties proceeded to a pre-disciplinary conference on June 22, 2006. Plaintiff was then terminated on June 30, 2006, which he grieved on July 8, 2006. Plaintiff was informed by Defendant on July 6, 2006, that his grievance related to the RIF was closed due to his being discharged.[55] Plaintiff participated in a hearing before the University's Staff Employment Grievance Committee in September 2006.

Plaintiff argues that he received no pre-deprivation procedural due process as to the RIF. This argument is contradicted by Plaintiff's responses to Defendant's Statement of Material Facts Not in Controversy and his deposition testimony. In its Statement of Material Facts, Defendant states: "The Plaintiff was afforded two total pre-termination hearings, [including] one prior to his RIF . . . ."[56] In response, Plaintiff states that this statement is undisputed, but incomplete.[57] Plaintiff goes on to state that he did not know that the June 13, 2006 meeting was a pre-termination hearing and that he had no opportunity to respond.[58] However, in his deposition, Plaintiff states that the meeting allowed him to air all of his concerns.[59] Thus, the Court finds

_____

judgment in favor of Defendant and against Plaintiff on these claims is appropriate.

[55]Docket No. 52, Ex. 13.

[56]Docket No. 48 at xviii.

[57]Docket No. 50 at xxxiii.

[58]*Id.*

[59]Docket No. 48, Ex. 1 at 172.

that Plaintiff has admitted that he was provided with a pre-deprivation hearing prior to his RIF and that hearing provided adequate pre-deprivation procedural due process.

Plaintiff further argues that the post-deprivation procedural due process as to the RIF was inadequate. The Court finds that the June 22, 2006 hearing provided Plaintiff adequate post-deprivation due process with regard to the RIF. Plaintiff had been given notice of the RIF on June 13, 2006.[60] Plaintiff admits that he was advised of the pre-disciplinary conference in advance.[61] The Notice provided Plaintiff notice of the charges against him.[62] Plaintiff further admits that, at the June 22, 2006 conference, he was permitted to testify on his own behalf.[63] The Court finds that, under these circumstances, these procedures satisfy due process.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 47) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff and close this case forthwith.

The hearing set for July 29, 2010 is STRICKEN.

---

[60]*Id.*

[61]Docket No. 48, Ex. 4 at 7; Docket No. 48, Ex. 9.

[62]Docket No. 48, Ex. 9.

[63]Docket No. 50 at xxxiii.

DATED   July 22, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge